FILED
SUPERIOR COURT
OF GUAM

2014 DEC 24 PM 1: 44

CLERK OF COURT
BY:_____

# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| **HUBTEC INTERNATIONAL CO.,** a Guam Corporation | ) Case No. CV 1358-12 |
| Plaintiff, | ) |
| vs. | ) **DECISION AND ORDER ON DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT** |
| **GOVERNMENT OF GUAM** and **JOANNE BROWN**, in her capacity as Director of the **DEPARTMENT OF PUBLIC WORKS,** an instrumentality of the government of Guam, | ) |
| Defendants. | ) |

## INTRODUCTION

This matter came before the Honorable Alberto C. Lamorena III on September 29, 2014 upon the Second Motion for Summary Judgment of Defendants Government of Guam and Joanne Brown in her former capacity as Director of Department of Public Works ("DPW"). Attorney John R. B. Bell represents Plaintiff Hubtec International Co. and Assistant Attorney General Kenneth Orcutt represents Defendants. For the reasons set forth below, the Court GRANTS the Motion.

## BACKGROUND

The parties entered a contract on January 7, 2010 for a construction project in the amount of $1,835,040.00. According to the contract, Plaintiff would remove and replace existing culverts, reconstruct pavement, make various safety improvements, and construct a rock slide retaining wall in southwestern Guam. The project was named "Route 2 Culverts and Side Repair," and numbered GU-NH-002(104).

*ORIGINAL*

Federal Highway Administration ("FHWA") funded the project through grants pursuant to the Federal-Aid Highway Program and the American Recovery and Reinvestment Act of 2009. Such funding was contingent on a number of conditions, including the Buy America requirement of 23 U.S.C. § 313, which requires that, absent an FHWA waiver, all steel and iron that is to be permanently incorporated in funded projects must be manufactured in the United States. The parties' contract thus had a provision requiring Plaintiff to use American steel. Plaintiff submitted proposals for Korean steel, which were rejected. Plaintiff then submitted proposals to use U.S. steel, which were approved.

The FHWA visited the project site on January 21, 2011 and found both Korean and American steel on the premises. Plaintiff's President and Project Manager, Mr. Young Kim, stated that the Korean steel was only used for slit fences, while American steel was used in the walling. Plaintiff was ultimately unable to prove that it used U.S. steel on the project. In a letter on February 3, Plaintiff acknowledged to Defendants that Korean steel had been used. A wall in which Korean steel had been used was thereafter removed and reconstructed with American steel.

The ensuing investigation into Plaintiff's business revealed that Plaintiff had submitted false invoices to Defendants to be paid greater amounts than to which it was entitled. This practice led to criminal charges and a subsequent guilty plea in a federal case, United States v. Young C. Kim and Hubtec Int'l Corp., Guam District Court Case No. 12-00029. Defendants terminated their contract with Plaintiff on February 11, 2011. They contracted with another company, IMCO General Construction ("IMCO"), to complete Project GU-NH-002(104) for $3,815,491.72.

Plaintiff sought payment for work it performed by filing an administrative appeal with the Office of Public Accountability ("OPA"). The OPA found that, in light of Plaintiff's breach, Defendants' termination of the contract was justified. Plaintiff then sued Defendants in the instant case on December 10, 2012 for breach of contract and quantum meruit. In response, Defendants raised counterclaims for breach of contract, violations of Guam's Deceptive Trade Practices - Consumer Protection Act, and fraud.

On May 9, 2014, upon Defendants' first Motion for Summary Judgment, this Court dismissed Plaintiff's claims. The Court also awarded Defendants the $120,000.00 lost in federal

funding caused by Plaintiff's breach of contract. Plaintiff subsequently submitted a Motion for Reconsideration and Clarification on May 19, which the Court denied on October 17.

Defendant Government of Guam also filed a Complaint in CV 0738-13 against Plaintiff's President, Mr. Kim, alleging violations of Guam's Deceptive Trade Practices - Consumer Protection Act and fraud for the same conduct. The Government of Guam moved for summary judgment in that case, which was denied on May 14, 2014. The matter was moreover dismissed because the court found that the Government of Guam lacked standing to sue under the Consumer Protection Act, and that the economic loss rule extended to fraud. Both issues are currently on appeal.

Defendants filed their Second Motion for Summary Judgment in the instant case on August 7, 2014. Plaintiff filed its Motion in Opposition to Defendant's Second Motion to Summary Judgment on September 4. Defendants replied on September 18. The Court heard oral arguments on September 29 and took the matter under advisement.

## DISCUSSION

Defendants seek summary judgment on their three counterclaims: (1) breach of contract; (2) violations of Guam's Deceptive Trade Practices - Consumer Protection Act; and (3) fraud. (Def.'s Second Mot. for Summ. J. 2.) Because the dispositions of the second and third claims may be contingent upon the Guam Supreme Court's ruling in CV 0738-13, the Court will abstain from addressing them pending the Supreme Court's decision. This Court stated such at the summary judgment hearing on September 29, 2014 without objection by either party. Thus, for the time being the Court will only consider Defendants' breach of contract counterclaim.

I.       **Summary Judgment Standard**

Summary judgment is appropriate where "the pleadings, depositions, answer to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Guam R. Civ. P. Rule 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Rule 56(c) further mandates summary judgment against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

In weighing summary judgment, a court must "draw inferences and view the evidence in a light most favorable to the non-moving party." Bank of Guam v. Flores, 2004 Guam 25 ¶ 7. If

the movant demonstrates a lack of genuine issue of material fact, the non-moving party must then present "sufficient evidence which establishes a factual dispute requiring resolution by a fact-finder." Guam Pac. Enter., Inc. v. Guam Poresia Corp., 2007 Guam 22 ¶ 8 (internal quotation marks and citations omitted); see also Celotex, 447 U.S. at 325. The evidence must be "significant" and "probative," Iizuka Corp. v. Kawasho Int'l (Guam), Inc., 1997 Guam 10 ¶ 8, and the factual dispute must be "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," Guam Pac. Enter., Inc., 2007 Guam 22 ¶ 8 (quoting T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)). The ultimate inquiry for a court is thus "whether the 'specific fact' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." Flores, 2004 Guam 25 ¶ 7.

## II.      Summary Judgment Is Appropriate in This Case

## A.      The Issue of Plaintiff's Breach of Contract

The Court has already determined that there is no genuine issue about a material fact with respect to whether Plaintiff breached its contract with Defendants; the Court has moreover declined to reconsider that decision.

In reaching its decision on Defendants' first Motion for Summary Judgment, the Court noted that the OPA's "factual findings are conclusive on matters relating to the breach of contract," and that the OPA "determined that Plaintiff breached the contract by using Korean steel when the terms required use of American steel." (Decision & Order, May 9, 2014, 10:15-19.)

Even if the OPA's findings were not binding, summary judgment would still be appropriate. The Court found that Defendants submitted multiple declarations in support of their counterclaim, and that Plaintiff even admitted, on several occasions, to using non-conforming steel on the project in violation of the contract. (Decision & Order, May 9, 2014, 10:1-12.) Plaintiff, on the other hand, failed to provide any factual support on the issue. (Id.)

Even after drawing inferences and viewing the evidence in a light most favorable to the Plaintiff, there is no genuine issue of material fact with respect to Plaintiff's breach of contract.

//

//

**B.    The Issue of Defendants' Damages**

In their Second Amended Answer to Plaintiff's Complaint, Defendants allege that "[d]ue to Plaintiff's breach and default of the contract, [Defendants] suffered damages when [they were] obliged to retain a new contractor to correct Plaintiff's work and finish the Route 2 project." (Def.'s Second Am. Answer to Pl.'s Compl. ¶ 24.) Defendants further note that "damages include an amount equal to the cost of hiring another contractor to complete the performance contemplated by the contract." (Id.) Defendants also allege damages for "additional construction management costs," and having "overpaid plaintiffs for undistributed materials." (Id. ¶¶ 25-6.)

Plaintiff counters that the issue of damages is a factual dispute for trial. (Pl.'s Mot. in Opp'n to Def.'s Second Mot. for Summ. J. 5:7-11.) It contends that the $3,815,491.72 contract with IMCO "was not actually 'the project' [Plaintiff] was hired to do, but, instead, a new project with different requirements, different terms, and a new contract for which [Plaintiff] cannot under any contract damages theory be expected to pay for." (Id.) Plaintiff further argues that Defendants were "fully compensated via the performance bond payment . . . for any economic loss caused by the breaches of [Plaintiff]." (Id. 5:11-13.)

It is well-settled that a non-breaching party may recover from the breaching party the cost to finish the contracted construction project. See U.S. for Use of Palmer Const., Inc. v. Cal State Elec., Inc., 940 F.2d 1260, 1265 (9th Cir. 1991); see also Hughes Commc'ns Galaxy, Inc. v. United States, 271 F.3d 1060, 1066 (Fed. Cir. 2001) (quoting E. Allan Farnsworth, Farnsworth on Contracts, § 12.11 (2d ed. 1998)) ("[W]here a building contractor breaches a first contract and the owner obtains substitute performance under a second contract, the owner can recover any additional amount required by the second contract beyond what the owner would have had to pay under the first."). As phrased by the Ninth Circuit, "regardless of the value of the work performed by the breaching party, if the amount the non-breaching party must pay to a third party to finish the job, when added to the amount it has already paid to the breaching party, exceeds the contract price, the non-breaching party may recover the excess amount from the breaching party as damages." U.S. for Use of Palmer Const., Inc., 940 F.2d at 1265.

Some jurisdictions require that the difference in cost between the original and substitute contracts be reasonable. In Palmer, for instance the Ninth Circuit looked to California law,

which provides that "[i]n building contracts '[t]he measure of damages . . . is the reasonable cost . . . to finish the work in accordance with the contract.'" U.S. for Use of Palmer Const., Inc., 940 F.2d at 1261-62 (citing Walker v. Signal Cos., Inc., 149 Cal.Rptr. 119, 124 (Ct. App. 1978)).

Here, even if there were a reasonableness requirement, Plaintiff is unable to advance any specific facts suggesting that the amount of Defendants' substitute contract with IMCO was unreasonable. Rather than refer to the record with any particularity, Plaintiff baldly asserts that Defendants' contract with IMCO concerned a "new project with different requirements, different terms, and a new contract." (Pl.'s Mot. in Opp'n to Def.'s Second Mot. for Summ. J. 5:7-11.)

Defendants, on the other hand, provide declarations and exhibits that suggest just the opposite. The Declaration of Defendant Joanne M.S. Brown, former director of Department of Public Works, includes the contract between Defendants and IMCO. (Brown Decl., at 2.) The contract is again for project number GU-NH-002(104), "Route 2 Culverts and Slide Repair." (Id. at 4-5.) The contract required IMCO to "furnish all the necessary labor, materials, equipment, tools and services necessary to perform and complete in a workmanlike manner all of the work required to take over and complete the construction of the Project." (Id. at 6.)[1] The contract also states that IMCO was the "lowest responsive, responsible bidder able to take over and complete the Project." (Id.)

The IMCO contract further outlines the "Description of Work." (Brown Decl., at 16-18.) It details the work to be performed on the Sella Bay Culvert, the Cetti Bay Culvert, the Cetti Rock Slide Wall, and the Umatac Baseball Culvert. Having reviewed both contracts, the specifications for IMCO are substantially similar to those laid out in the contract with Plaintiff. Compare Brown Decl., at 16-18 (IMCO contract), with Gerardo Decl. Ex. A, at 483-84 (materials before OPA, including Defendants' contract and work details with Plaintiff).

The IMCO contract differs where it notes either that "[t]he previous contractor [Plaintiff] performed limited work within this area," or "[t]he previous contractor performed the following work within this area," listing work completed. (Brown Decl., at 16-18.) It further

---

[1] The Court is also mindful that Brown's Declaration includes a change order for the project, but this did not alter the price. (Brown Decl. at 2, 323.)

notes that with respect to the Umatac Baseball Culvert, "[t]he previous contractor installed a new outlet structure [that] has not been accepted by the government and must be removed." (Id. at 17.)

Furthermore, the Declaration of Thomas Paulino, Deputy Financial Manager for Guam Department of Administration and authorized Custodian of Records, includes copies of invoice payments from IMCO totaling the contract price, $3,815,491.00. (Paulino Decl., at 1-2.) The invoices, moreover, are for the same project name and number as in the prior contract with Plaintiff, GU-NH-002(104), "Route 2 Culverts and Slide Repair." (Id.)

On the basis of the above declarations and exhibits, the Court is satisfied that there can be no genuine dispute about the terms and price of the contract with IMCO, which Defendants executed in order to complete the project that Plaintiff did not. The contract with IMCO was thus not for, as Plaintiff alleges, "a new project." Further supporting Defendants' position, IMCO was the lowest responsive, responsible bidder able to complete the project.

As for calculating appropriate damages, Defendants propose a figure in their instant motion:

> IMCO finished the project for $3,815,491.00. Of this amount, [Plaintiff's] bonding company paid $1,695,593.72. The remaining $2,119,897.28 for the IMCO contract was funded by DPW's Federal Highway Funds. Of this amount, $1,540,948.20 was obtained from the unexpected funds from the [contract with Plaintiff]. Subtracting $1,540,948.20 from $2,119,897.28 is $578,949.08.

(Def.'s Second Mot. for Summ. J. 17-19.) Defendants further note that this amount should be reduced by the amount of retainage on the original contract ($46,010.20), and the amount Defendants owed Plaintiff based on Plaintiff's submission of an invoice ($56,513.00). (Id.) These amounts, however, should be offset by Defendants' overpayment for purchased yet undistributed materials on two invoices ($45,968.00). (Id.)

The above total, $522,393.88, is added to the $120,000.00 amount this Court has already awarded Defendants as a result of their first Motion for Summary Judgment to equal $642,393.88.

Having reviewed the record, the Court finds that the above calculations are supported by the summary judgment materials Defendants provide; Plaintiff, on the other hand, does not set forth any significant, probative evidence that establishes a factual dispute requiring resolution

by a fact-finder. Even after drawing inferences and viewing the evidence in a light most favorable to the Plaintiff, there is no genuine issue of material fact with respect to Defendants' damages.

## CONCLUSION

In light of the foregoing, the Court GRANTS Defendants' Motion for Summary Judgment as it relates to Defendants' counterclaim for breach of contract. Plaintiff is hereby ordered to pay Defendants the requested amount of $642,393.88. The Court's prior order on May 9, 2014 for Plaintiff to pay Defendants $120,000.00 is consolidated into this order. Defendants' remaining two counterclaims, and the issue of attorneys' fees and punitive damages, are stayed pending the Guam Supreme Court's ruling in the related case, CV 0738-13.

**IT IS SO ORDERED** this day of December 24, 2014.

_____
HONORABLE ALBERTO C. LAMORENA III
Presiding Judge, Superior Court of Guam

SERVICE VIA COURT BOX

I acknowledge that a copy of the original hereto was placed in the court box of Phil Torres;
AG - Civil
Date: 12/24/14  Time: 1:50 pm

Deputy Clerk, Superior Court of Guam